**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

| | |
|---|---|
| **Nathalie Armas and Lester Coba**<br>**individually and on behalf of N.C., a minor**<br><br>**Plaintiffs**<br><br><br>**v.**<br><br>**The Colony at Boynton Beach Homeowners**<br>**Association, Inc., Century Management**<br>**Consultants, Inc., and Horace Allison,**<br>**President of The Colony at Boynton Beach**<br>**Homeowners Association**<br><br>**Defendants.** | **Case No.:** |

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, DAMAGES AND DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiffs, Nathalie Armas ("Plaintiff Armas") and Lester Coba ("Plaintiff Coba") individually and on behalf of N.C., their minor child, (collectively "Plaintiffs") by and through counsel, Disability Rights of Florida, Inc. and Henrichsen Law Group, file this Complaint against the following three Defendants: The Colony at Boynton Beach Homeowners Association, Inc. ("Colony HOA"), Century Management Consultants, Inc. (Century Management), and Horace Allison, President of The Colony at Boynton Beach Homeowners Association ("Allison"), seeking an award of monetary damages and declaratory and injunctive relief against all three Defendants as compensation and relief for their prohibited

and unlawful conduct that violated and continues to violate Plaintiffs' civil rights to not be discriminated against on account of N.C.'s disabilities under the Fair Housing Amendments Act, 42 U.S.C. §§ 3601 - 3619 ("Fair Housing Act" or "FHA") and the Palm Beach County Code §§ 15.36-15.67 (PBCC).

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief and for monetary damages against all three Defendants in an amount in excess of $15,000.00, exclusive of interest, costs and attorney's fees.

2. This Court has subject matter jurisdiction over Plaintiffs' federal claims against the Defendants and of this action pursuant to 42 U.S.C. § 3613(a) and (c) and pursuant to 28 U.S.C. §§ 1331, 2201-2202, and 1343(a)(3) and (4).

3. This Court has supplemental jurisdiction over Plaintiffs' claims against the Defendants for violation of the Palm Beach County Code pursuant to 28 U.S.C. § 1367(a) because the materials facts involved in Plaintiffs' claims pursuant to the Palm Beach County Code are the same facts and therefore are intertwined with and directly related to the federal claims presented in this action such that the claims pursuant to the Palm Beach County Code form part of the same case or controversy.

4. Plaintiffs seek judicial redress for the unlawful deprivation of their right to fair housing established under the United States Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et. seq. and the Code of Laws and Ordinances Relating to Palm Beach County Government, Palm Beach County Code Chapter 15.

5. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendants Colony HOA and Century Management are located in and conduct business in this

District, Defendant Allison lives in this District, and because the unlawful conduct, acts and omissions described herein and that give rise to Plaintiffs' action against Defendants occurred in Palm Beach County, Florida.

## PARTIES

6. Plaintiff Nathalie Armas is 44 years of age. She works as a hospice nurse and recently gave birth to a baby after an arduous high-risk pregnancy.

7. Plaintiff Lester Coba is 41 years of age. He works as a fine finish carpenter.

8. Plaintiffs jointly own a home located at 7526 Colony Palm Drive, Boynton Beach, FL 33436 (subject property), that is part of the community known as The Colony at Boynton Beach.

9. Plaintiffs Nathalie Armas and Lester Coba are the parents of N.C.

10. N.C. is 7 years of age. N.C. is diagnosed with autism and he lives with his parents in the subject property.

11. N.C. is a person with a disability as that term is defined under the federal Fair Housing Amendments Act. N.C. has mental impairments that substantially limit his major life activities including his ability to function socially and emotionally.

12. Defendant Colony at Boynton Beach Homeowners Association, Inc. (Colony HOA) is a Florida not-for-profit corporation created pursuant to and governed by Chapter 718 (2021) of the Florida Statutes.

13. Homeowners situated within The Colony at Boynton Beach, including Plaintiffs Armas and Coba, are subject to the governing documents of The Colony at Boynton Beach Homeowners Association including the Declaration of Restrictions and Protective Covenants for Colony at Boynton Beach and the By-Laws of the Colony at Boynton

Beach Homeowners Association, Inc., as recorded in the Official Records of West Palm Beach, Book 11191/Page 1400.

14. Defendant Horace Allison (Allison) is the President of The Colony at Boynton Beach Homeowners Association.

15. Defendant Century Management Consultants, Inc. (Century Management) is a Florida for-profit corporation with a principal address of 2950 Jog Rd., Greenacres, FL 33467. Defendant Century Management provides management services for Defendant Colony HOA.

16. Defendant Century Management does business under the fictitious name "CMC Management" without benefit of registration with the Florida Secretary of State, which is required as a public policy of the state of Florida by the Florida Fictitious Name Act. The statute is mandatory and is strictly construed. Persons "may not engage in business under a fictitious name unless the person first registers the name...". § 865.09(a)(a), Fla. Stat. (2020).

17. Defendant Century Management is Defendant Colony HOA's management agent.

18. On information and belief, Defendant Colony HOA contracts with Defendant Century Management to provide management services including implementing the direction of the Colony HOA Board of Directors, issuing notices for violation of governing documents, and facilitating day to day operations within The Colony at Boynton Beach.

## STATEMENT OF FACTS AND LAW

19. At all times relevant, N.C. is and was disabled[1] as defined by the Fair Housing Act.

20. Symptoms of N.C.'s disability include elopement, task refusal, vocal stereotypy, motor stereotypy, physical aggression, tantrums, and property destruction.

21. N.C.'s medical providers include Dr. Jaime Baquero, who is a pediatric neurologist and has been seeing N.C. as a patient since approximately 2017.

22. Before moving to Dr. Baquero's practice, N.C. was treated by Dr. David Marcus, who has since retired.

23. Ms. Barbara Valenzuela, MS, BCBA is also a medical provider to N.C. Ms. Valenzuela has a Master of Social Work, is a Board-Certified Behavior Analyst, and has been part of N.C.'s treatment team since approximately 2021.

24. Plaintiff Nathalie Armas is N.C.'s mother and is a person associated with a person with a disability within the meaning of 42 U.S.C. § 3604(f).

25. Plaintiff Lester Coba is N.C.'s father and is a person associated with a person with a disability within the meaning of 42 U.S.C. § 3604(f).

26. In August 2020, Plaintiffs installed an above-ground pool in their backyard on the recommendation of Dr. Marcus to help relieve some of the symptoms of N.C.'s disabilities.[2]

27. When N.C. began seeing Dr. Baquero, he recommended to Plaintiffs that they continue use of the above-ground pool as part of N.C.'s treatment and disability-related therapies.

---

[1] The term "disability" or "disabled" is synonymous with the term "handicap" as defined in 42 U.S.C. § 3602(h). Plaintiffs use the terms "disability" or "disabled."

[2] Plaintiffs also installed a playset in their backyard also in an effort to help relieve some of the symptoms of N.C.'s disabilities. The playset is not the subject of this complaint.

28. Section 10 of Defendant Colony HOA's Architectural Control Committee Architectural Criteria & Guidelines prohibits the installation of above-ground-pools in the community.

29. Plaintiffs did not request permission from Defendant Colony HOA to place the above-ground pool in their backyard as they did not understand that permission was required to place items in their backyard.



Plaintiffs' above-ground pool.

30. On August 15, 2021, Plaintiffs submitted two "Architectural Review Forms" (ARC) forms to Defendant Colony HOA requesting permission, as required by the Declaration of Restrictions and Protective Covenants for Colony at Boynton Beach, to install new windows in their home and an aluminum roof on their back porch.

31. On or about September 14, 2021, Plaintiff Lester Armas spoke with Defendant Allison, President of Defendant The Colony at Boynton Beach Homeowners Association, about Plaintiffs' pending ARC forms.

32. Defendant Allison notified Plaintiff Lester Amras that Plaintiffs' ARC requests would not be approved and stated that Plaintiffs should come to the next meeting of Defendant Colony HOA's Board of Directors to discuss the matter.

33. On September 16, 2021, Plaintiffs attended a meeting of Defendant Colony HOA's Board of Directors.

34. Defendant Allison, members of Defendant The Colony at Boynton Beach Homeowners Association, Inc. including the Colony Board of Directors, Plaintiff Nathalie Armas, Plaintiff Lester Coba, other Colony homeowners, and Defendant Century Management employee Alex Torres were in attendance at the September 16, 2021 Colony Board of Director's meeting.

35. At the September 16, 2021 meeting, Defendant Allison notified Plaintiffs that their ARC request to replace their windows would not be approved due to unspecified safety concerns.

36. Defendant Allison also stated that based on his viewing of the above-ground pool, which he was able to see only when he entered Plaintiffs' property without invitation, Plaintiffs were in violation of and had broken the laws of the community.

37. Defendant Allison notified Plaintiffs at the September 16, 2021 meeting that they would be fined if they did not remove the pool within 10-days.

38. Plaintiff Nathalie Armas explained to Defendant Allison and to all present at the September 16, 2021 meeting that her son N.C. had disabilities and that the above-ground pool was essential and needed as part of the treatment of his disabilities.

39. Plaintiff Armas' explanation and statements concerning N.C. made at the September 16, 2021 meeting was a request for reasonable accommodation made to Defendant Colony HOA, Defendant Allison, and Defendant Century Management.

40. Plaintiff Lester Coba also explained at the September 16, 2021 meeting to all present that his son N.C. had special needs and that the pool helped to relieve symptoms of N.C.'s disabilities including calming him down during tantrums.

41. Plaintiff Coba's explanation and statements concerning N.C. made at the September 16, 2021 meeting was a request for reasonable accommodation made to Defendant Colony HOA, Defendant Allison, and Defendant CMC.

42. Defendant Allison notified Plaintiffs at the September 16, 2021 meeting that they had to remove the above-ground pool regardless of their explanations and statements about N.C. and their requests to keep the above-ground pool as a reasonable accommodation of N.C.'s disabilities.

43. Defendant Allison directed Defendant Colony HOA's management agent, Defendant Century Management's employee Mr. Alex Torres, to fine Plaintiffs should they fail to remove the above-ground pool as directed.

44. On September 17, 2021, the day after the Colony Board of Director's meeting, Mr. Alex Torres made a complaint to the Palm Beach County Planning, Zoning and Building Department, reporting a "pool, play area and exp[a]nded driveway installed without permits" (sic). *See* Code Enforcement complaint record, attached and incorporated as Exhibit 1.

45. On the same day that Mr. Torres made his complaint to code enforcement, a Palm Beach County Planning, Zoning and Building Department code enforcement officer visited Plaintiffs' home, took photographs, and issued Plaintiffs a notice of violation that instructs Plaintiffs to obtain all required building permits for the above-ground pool by November 21, 2021 or face a potential fine of up to $1,000 per day. Exhibit 2.

46. The code enforcement officer took photographs of Plaintiffs' above-ground pool through their hedge and included them in the code enforcement complaint record. *See* Exhibit 1.



Photographs from Exhibit 1 – Code Enforcement Complaint Record

47. On September 21, 2021, Defendant Colony HOA's management agent, Defendant Century Management, sent a "courtesy notice" to Plaintiffs "On Behalf of the Board of Directors." The courtesy notice instructed Plaintiffs to "remove above ground pool within 10 days as stated at the last Board Meeting. Failure to comply will result in a fine being imposed on your unit." The September 21, 2021 courtesy notice is attached as Exhibit 3.

48. The September 21, 2021 courtesy notice was the first written notice that Plaintiffs received regarding the above-ground pool though it had been installed in August, 2020.

49. On September 27, 2021, Plaintiffs reiterated their oral requests for reasonable accommodation to keep the above-ground pool by emailing a written "Request for Reasonable Accommodation" form and two supporting medical documents to Colony's management agent, Defendant Century Management. Plaintiffs also sent a copy of their request for accommodation by certified mail to Defendant Century Management. The Plaintiff's September 27, 2021 written request for reasonable accommodation, along with accompanying medical support documents, is attached as Exhibit 4.

50. In his September 24, 2021 letter which accompanied Plaintiffs' request for accommodation, Dr. Jaime Baquero opines that N.C. has "been diagnosed with Autism

Spectrum Disorder" and that his "treatment entails therapies as well as an above ground pool as well as a playground which helps with his tantrums and maladaptive behaviors." Dr. Baquero writes that N.C. "is entitled to have the proper tools to maximize his developmental potential and cannot be discriminated against based on his diagnosis." *See* Exhibit 4.

51. Plaintiffs' request for reasonable accommodation also included a letter from Barbara Valenzuela, MS, BCBA, confirming her professional opinion that N.C. exhibits behaviors that are related to his autism spectrum disorder including elopement, tantrums, task refusal, going off task, vocal stereotypy, motor stereotypy, physical aggression and property destruction. In her letter, Ms. Valenzuela explains that these autism-related "behaviors…have been causing [N.C.] to have limited functioning socially and emotionally at home and in the community," that the identified treatments (including the above-ground pool) are intended to "increase replacement behaviors" including compliance, functional communication, and interactive play and concludes that the "above ground pool and park set [are] key components to increase motivation for [N.C.'s] skill acquisition and behavior reduction programs." In her letter, Ms. Valenzuela also highlights the importance of the above-identified treatments by stating that "if left without intervention… problem behaviors will likely remain the same or increase without behavior intervention." *See* Exhibit 4.

52. On or about October 6, 2021, Plaintiffs removed the above-ground pool in response to Defendants' demands and threat of fines. Plaintiffs feared that if they did not remove the above-ground pool, they may risk losing their home.

53. On October 6, 2021, Plaintiffs emailed Defendant Colony HOA's management agent, Defendant Century Management, to request an update regarding the September 16 and September 24, 2021 requests for reasonable accommodation that Plaintiffs had made, explaining that their "son has been unable to receive his therapy, making his safety a big concern." Plaintiffs' email is attached as Exhibit 5.

54. Defendant Colony HOA's management agent, Defendant Century Management, responded to Plaintiff's October 6, 2021 request for an update by advising that Plaintiffs' request for accommodation had been forwarded to Defendant Colony's Board of Directors. *See* Exhibit 5.

55. On October 7, 2021, Plaintiffs received a letter from Defendant Colony HOA's attorney denying their request to maintain the above-ground pool on their property as a reasonable accommodation of N.C.'s disabilities because the "request is not a valid or proper request for accommodation" as Plaintiffs' "backyard" falls outside of the Fair Housing Act's definition of "dwelling." Defendant's position as stated in the October 7 letter from its counsel that Plaintiffs are not entitled to any accommodation outside of the walls of their house or "public or common use spaces" effectively renders any further interactive process futile.[3] *See* Exhibit 6.

56. On October 26, 2021, Plaintiffs received an email from Defendant Century Management explaining that Plaintiffs' ARC applications for the requested aluminum porch roof and replacement windows had been approved.

57. On November 1, 2021, Plaintiffs, through counsel, submitted another written request for reasonable accommodation seeking to install the above-ground pool. The letter explains

---

[3] Plaintiffs complain only about Colony's denial of their request for reasonable accommodation from Defendant Colony's no-above-ground-pools policy. Plaintiffs agree that Colony's governing documents permit playsets.

that requests for accommodation are not limited to the four walls of a person's physical dwelling structure because "The Supreme Court has repeatedly explained that the language of the Fair Housing Act is broad and inclusive and must be interpreted broadly to ensure that people with disabilities can use and enjoy their dwellings just like people without disabilities." Despite Defendant Colony HOA's erroneous position that any accommodation outside the walls of Plaintiffs home or "public or common use spaces," "is not a valid request or proper request for accommodation," Plaintiffs' counsel again provided the letters of medical support from Dr. Baquero and Ms. Valenzuela. *See* Exhibit 7.

58. On November 8, 2021, Defendant Colony HOA, through counsel, again denied Plaintiffs' request for reasonable accommodation, and maintained the position made in its October 7 letter that Plaintiffs' backyard falls outside the scope of the protections afforded in the Fair Housing Act. *See* Exhibit 8.

59. On or about December 15, 2021, Defendant Colony HOA, through its management agent Defendant Century Management, sent Plaintiffs and invoice for unspecified "Legal Fees" in the total amount of $2,593.50 comprised of one charge for "Legal Fees" of $2,023.50 and one charge for "Legal Fees" of $570.  *See* Exhibit 9.

60. The December 15, 2021, invoice states that interest will be applied starting January 1, 2022. *See* Exhibit 9.

61.  On December 20 and December 21, 2021, Plaintiff Armas wrote to Defendant Colony HOA's management agent Defendant Century Management and asked for an explanation of the December 15, 2021 invoice. *See* Exhibit 10.

62. On December 21, Defendant Colony HOA's management agent Defendant Century Management sent a notice to Plaintiffs that said "[r]egarding the legal fees the board informed you multiple times that you will be responsible for any legal fees for contacting or dealing with any personal issues regarding your property with the communities (sic) attorney. When you attended the board meeting with all the board members they informed you about the legal fees that would be applied to your account for contacting the lawyer. The communities (sic) lawyer is there for the use of the board, not for the personal use of the owners. Your lawyer has also contacted the attorney. Anytime you have contacted the attorney with questions or advice there is a charge." *See* Exhibit 11.

63. On information and belief, the "Legal Fees" charged to Plaintiffs and that Defendant Colony HOA and Defendant Century Management seek to collect in the December 15, 2021 invoice concerned Defendants' consideration of Plaintiffs' request for accommodation and related consultation with their attorney that took place before Defendants denied Plaintiffs' request for reasonable accommodation.

64. Defendants do not have any right to charge Plaintiffs for legal fees associated with the consideration of their requests for reasonable accommodation under any law or contract.

65. On or about December 22, 2021, Defendant Colony HOA, through its management agent Defendant Century Management, sent Plaintiffs a late notice for the same $2,593.50 total amount as contained in Defendants' December 15, 2021 invoice but included an itemization as follows

    a.  "05 – Attorney Fees" in the amount of $570.00, and

    b.  "VIO-VIOLATION" in the amount of $2,023.50. See Exhibit 12.

66. On December 22, 2021, Plaintiffs, through counsel, wrote to counsel for Defendants Colony HOA and addressed the reasons Defendants gave for their denial of Plaintiffs' request for reasonable accommodation in great detail. In the December 22, 2021 letter, Plaintiffs also notified Defendant Colony HOA's counsel that Defendants' efforts to charge fees related to Plaintiffs' request for reasonable accommodation and Defendants' contacting of code enforcement after Plaintiffs requested accommodation were retaliatory acts that interfered with Plaintiffs' exercise of their fair housing rights. *See* Exhibit 13.

67. On December 28, 2021, Defendant Colony HOA, through its management agent Defendant Century Management, sent Plaintiffs an "updated itemized bill," attached and incorporated as Exhibit 14, that is for a different amount of $883.50 and that describes different reasons for why the amount was incurred, to wit:

   a. Legal Fees 9/2021 – Receipt and review of ARC issue regarding porch application - $228

   b. Legal Fees 9/2021 – Review correspondence and client document regarding ARC application for 7526 Colony Palm Dr. - $57

   c. Legal Fees – 9/2021 – Call with client regarding pool issues - $85

   d. Legal Fees – 10/2021 – Draft owner letter for ARC applications - $513

68. Defendants Colony HOA, Century Management, and Allison have no right under the Florida Homeowners Association Statute or the relevant governing documents to charge Plaintiffs any amounts related to the receipt and review of ARC applications.

69. On December 29, 2021, Plaintiffs, through counsel, wrote to Defendants' counsel and again explained that Defendants may not charge legal fees related to Plaintiffs' request for reasonable accommodation and requested copies of any documents that Defendants

relied upon to charge Plaintiffs the amounts identified in the December 22, 2021 late notice. See Exhibit 15.

70. On January 13, 2022, and having received no response to the December 29, 2021 letter, Plaintiffs' counsel wrote to Defendants' counsel and again notified Defendants' counsel that Defendants had no right to charge fees related to consideration of Plaintiffs' request for reasonable accommodation and that Defendants' actions in attempting to collect these amounts was retaliatory conduct prohibited by the Fair Housing Act. Plaintiffs' counsel again requested that Defendants provide authority for the charges alleged in Defendants' various invoices and late notices. See Exhibit 16.

71. On January 14, 2022, Defendants' counsel responded by email to Plaintiffs' counsel's January 13, 2022 email and, among other things, denied that Defendants were retaliating against Plaintiffs and alleged that the letters from Dr. Baquero and Ms. Valenzuela were insufficient to support Plaintiffs' request for reasonable accommodation. The January 14 email does not disclaim Defendant Colony HOA's position that any accommodation to Plaintiffs' backyard falls outside the scope of the Fair Housing Act. *See* Exhibit 17.

72. On January 19, 2022, Plaintiffs, through counsel, responded by email with an attached letter to Defendants' counsel and reiterated that Defendants' attempts to collect money from Plaintiffs related to their request for reasonable accommodation was unlawful, retaliatory and a violation of the Fair Housing Act. Plaintiffs' counsel also submitted an architectural review form that reiterated Plaintiffs' request for reasonable accommodation to install an above-ground-pool and provided specifications for the pool. *See* Exhibit 18.

73. To date, Defendants have not approved Plaintiffs' request for accommodation, nor have they disclaimed their position that any accommodation request related to their backyard is a non-starter due to their understanding of their obligations under the Fair Housing Act.

**COUNT 1 – ALL DEFENDANTS**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT (FHA)**
**(42 U.S.C. 3604(f)(3)(B))**

74. Plaintiffs reallege and incorporate by reference Paragraphs 6 through 73, inclusive, of this Complaint as if fully set forth herein.

75. The FHA defines "handicap" as follows: "1) a physical or mental impairment which substantially limits one or more … major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment...". 42 U.S.C.A § 3602(h).

76. Plaintiffs use the term "disability" and "disabled" in lieu of "handicap" and "handicapped."

77. At all times relevant to this action, Defendants knew that Plaintiff N.C. was a person with a disability as that term is defined in the FHA.

78. At all times relevant to this action, Defendants knew that Plaintiffs Armas and Coba were persons associated with a person with a disability within the meaning of 42 U.S.C. § 3604(f).

79. The FHA prohibits discrimination in housing against persons with disabilities including refusing to make reasonable accommodations "in rules policies practice, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

80. On September 16, 2021, Plaintiffs verbally requested a reasonable accommodation when they sought an exception to Defendant Colony HOA's no-above-ground-pool policy.

81. On September 27, 2021, Plaintiffs made a written request for reasonable accommodation seeking the same exception to Defendant Colony HOA's no-above-ground-pool policy.

82. The requested accommodation was reasonable and necessary to afford Plaintiffs with an equal opportunity to use and enjoy their dwelling.

83. All of the Defendants violated Plaintiffs' rights under 42 U.S.C. § 3604(f)(3)(B) by denying Plaintiffs' request for reasonable accommodation and by refusing to permit Plaintiffs to maintain an above-ground pool at their home.

84. The accommodation that Plaintiffs requested of Defendants is reasonable and necessary to afford Plaintiffs with an equal opportunity to use and enjoy their dwelling; does not impose any undue financial or administrative burden on any of the Defendants; and does not require any fundamental alteration of any of the Defendants' facilities or programs.

85. Plaintiffs are aggrieved persons within the meaning of 42 U.S.C. §§ 3602(i) and 3613 as a result of being the victims of the Defendants' discriminatory conduct and business practices described in this complaint.

86. As a direct and proximate result of Defendants' acts, omissions, and violations of the Fair Housing Act, as detailed in his complaint, Plaintiffs have suffered damages including, but not limited to, physical and emotional distress, anxiety, fear, shame, and humiliation.

87. Defendants' actions described in this complaint were undertaken by Defendants with reckless and wanton disregard for Plaintiffs' civil rights and caused Plaintiffs to suffer emotional and psychological distress for which Plaintiffs are entitled to recover through

an award of compensatory and punitive damages against the Defendants, jointly and severally.

88. Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiffs are entitled to a judgment awarding them actual and punitive damages against the Defendants, jointly and severally, and injunctive and declaratory relief.

89.  Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiffs are entitled to a judgment against Defendant for an amount that pays their costs and reasonable attorney's fees.

**COUNT 2 – ALL DEFENDANTS**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**
**RETALIATION**
**(42 U.S.C. §3617 )**

90. Plaintiffs reallege and incorporate by reference Paragraphs 6 through 73, inclusive, of this Complaint as if fully set forth herein.

91. At all times relevant, N.C. was a person with a disability, and Plaintiffs Armas and Coba were persons associated with a person with a disability.

92. Because of Plaintiffs' requests for reasonable accommodation, Defendants Colony HOA, Allison, and Century Management threatened, coerced, and intimidated Plaintiffs and interfered with their right to exercise and enjoyment of their fair housing rights in violation of the Fair Housing Act, 42 U.S.C. § 3617 (the anti-retaliation clause).

93. The anti-retaliation clause of the Fair Housing Act provides Plaintiffs protection from retaliatory acts, stating that is is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [them] having exercised or enjoyed...any right granted or protected" by Section 3604 of the Fair Housing Act.

94. The anti-retaliation provision makes clear that to coerce, threaten, or intimidate a person, or to interfere with a person in their exercise, enjoyment, or their helping others exercise their rights, constitutes a separate and distinct violation of the Fair Housing Act. Retaliatory conduct is unlawful in an of itself.

95. On September 16 and 24, 2021, and on again on November 1, 2021, Plaintiffs exercised their right to request reasonable accommodations from Defendants Colony HOA, Century Management, and Allison.

96. Defendants Colony HOA, Century Management, and Allison subjected Plaintiffs to retaliation in violation of the Fair Housing Act when they reported Plaintiffs to code enforcement.

97. While Defendants knew about Plaintiffs' above-ground pool prior to Plaintiffs' request for reasonable accommodation, it was only after Plaintiffs requested accommodation that Defendants reported the pool to code enforcement. This action constitutes a discriminatory and adverse action because Plaintiffs were subject to a penalty in the form of an enforcement action by code enforcement that could have resulted in the imposition of a fine of up to $1,000.00 a day.

98.  Defendants further subjected Plaintiffs to retaliation by charging and demanding from Plaintiffs unlawful sums directly related to Plaintiffs' requests for reasonable accommodation and other sums that are not permitted to be charged by Defendants pursuant to the governing documents.

99. Defendants' efforts to charge Plaintiffs these unlawful amounts are an attempt to interfere with Plaintiffs' right to seek reasonable accommodation and to intimidate, coerce and threaten Plaintiffs on account of their having exercised their right to fair housing.

100.  These retaliatory acts by Defendants interfered with Plaintiffs' ability to exercise their

rights under the Fair Housing Act and led to further damages to Plaintiffs and their minor

child N.C.

101.  As a direct and proximate result of the Defendants' acts, ommissions, and violations of

the Fair Housing Act, Plaintiffs suffered and continue to suffer damages.

102.  Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiffs are entitled to a

judgment awarding them actual and punitive damages against the Defendants, jointly and

severally, and injunctive and declaratory relief.

103. Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiffs are entitled to a

judgment against Defendants for an amount that pays their costs and reasonable

attorney's fees.


**COUNT 3 – ALL DEFENDANTS**
**VIOLATION OF THE PALM BEACH COUNTY CODE OF LAWS AND**
**ORDINANCES**
**(Sec. 15-58(9))**

104.  Plaintiffs reallege and incorporate by reference Paragraphs 6 through 73, inclusive, of

this Complaint as if fully set forth herein.

105. This is an action for declaratory and injunctive relief and for monetary damages

pursuant to the Palm Beach County Code (PBCC), which Code, in Section 15-54,

provides for a civil action to remedy discrimination against a person on the basis of

disability.

106. The PBCC prohibits discrimination in housing against persons with disabilities

including by refusing to make reasonable accommodations "in rules policies practice, or

services, when such accommodations may be necessary to afford such person equal

opportunity to use and enjoy a dwelling." P.B.C.C. Sec. 15-58(9).

107. The PBCC defines "disability" as "a physical or mental impairment which substantially

limits one (1) or more … major life activities … a record of having such an impairment;

or … being regarded as having such an impairment...". P.B.C.C. § 15-37(10).

108. At all times relevant, all Defendants knew that N.C. was a person with a disability and

that Plaintiffs Armas and Coba were persons associated with a person with a disability.

109. Plaintiffs requested, as reasonable accommodation of N.C.'s disability, that Defendants

grant an exception to Defendant Colony HOA's no-above-ground-pools policy.

110. Plaintiffs' request for accommodation was reasonable and necessary to afford Plaintiffs

with an equal opportunity to use and enjoy their dwelling and did not impose any undue

financial or administrative burden on any of the Defendants and did not require a

fundamental alteration of any of the Defendants' facilities or programs.

111. All Defendants violated Plaintiffs' rights under the PBCC by denying Plaintiffs' request

for reasonable accommodation.

112. Plaintiffs are aggrieved persons within the meaning of Section 15-37(22) of the PBCC

as a result of being the victims of the discriminatory conduct described in this complaint.

113. Plaintiffs suffered damages as a direct and proximate result of Defendants' acts,

omissions, and violations of the PBCC.

114. Defendants' actions described in this complaint were undertaken by Defendants with

reckless and wanton disregard for Plaintiffs' civil rights and caused Plaintiffs to suffer

emotional and psychological distress for which Plaintiffs are entitled to recover through

an award of compensatory and punitive damages against the Defendants, jointly and severally.

115. Pursuant to Section 15-56 of the PBCC, Plaintiffs are entitled to actual and punitive damages as well as injunctive and declaratory relief and reasonable attorney's fees and costs.

## COUNT 4 – ALL DEFENDANTS
## VIOLATION OF THE PALM BEACH COUNTY CODE OF LAWS AND ORDINANCES
## (Sec. 15-58(15))

116. Plaintiffs reallege and incorporate by reference Paragraphs 6 through 73, inclusive, of this Complaint as if fully set forth herein.

117. This is an action for declaratory and injunctive relief and for monetary damages pursuant to the Palm Beach County Code (PBCC), which Code, in Section 15-54, provides for a civil action to remedy discrimination against a person on the basis of disability.

118. Because of Plaintiffs' requests for reasonable accommodation, Defendants threatened, coerced, and intimidated Plaintiffs and interfered with their right to exercise and enjoyment of their fair housing rights in violation of the Palm Beach County Code, Section 15-58(15) (the anti-retaliation clause).

119. The anti-retaliation clause of the PBCC provides Plaintiff protection from retaliatory acts and makes clear that to coerce, threaten or intimidate a person or to interfere with their exercise or enjoyment of their rights as identified in Article III of the PBCC, constitutes a separate and distinct violation of the PBCC.

120. On September 16 and 24, 2021, and on again on November 1, 2021, Plaintiffs exercised their right to request reasonable accommodations from Defendants.

121. Defendants Colony HOA, Century Management, and Allison subjected Plaintiffs to retaliation in violation of the PBCC when they reported Plaintiffs to code enforcement.

122. While Defendants knew about Plaintiffs' above-ground pool prior to Plaintiffs' request for reasonable accommodation, it was only after Plaintiffs requested accommodation that Defendants reported the pool to code enforcement. This action constitutes a discriminatory and adverse action because Plaintiffs were subject to a penalty by Defendants in the form of an enforcement action by code enforcement that could have resulted in the imposition of a fine of up to $1,000.00 a day.

123. Defendants further subjected Plaintiffs to retaliation by charging and demanding from Plaintiffs unlawful sums directly related to Plaintiffs' requests for reasonable accommodation and other sums that are not permitted to be charged by Defendants pursuant to the governing documents.

124. Defendants' efforts to charge Plaintiffs these unlawful amounts are an attempt to interfere with Plaintiffs' right to seek reasonable accommodation and to intimidate, coerce and threaten Plaintiffs on account of their having exercised their right to fair housing.

125. These retaliatory acts by Defendants interfered with Plaintiffs' ability to exercise their rights under the PBCC and led to further damages to Plaintiffs and their minor child N.C.

126. As a direct and proximate result of the Defendants' acts, ommissions, and violations of the PBCC, Plaintiffs suffered and continue to suffer damages.

127. Plaintiffs are aggrieved persons within the meaning of Section 15-37(22) of the PBCC as a result of being the victims of the discriminatory conduct described in this complaint.

128. Plaintiffs suffered damages as a direct and proximate result of the Defendants' acts, omissions, and violations of the PBCC.

129. Defendants' actions described above were undertaken with reckless and wanton disregard for Plaintiffs' civil rights, causing them to suffer emotional and psychological distress for which they are entitled to recover through an award of compensatory and punitive damages against the Defendants, jointly and severally.

130. Pursuant to Section 15-56 of the PBCC, Plaintiffs are entitled to actual and punitive damages as well as injunctive and declaratory relief and reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that the Court grant them the following relief:

1. Enter a declaratory judgment finding that the foregoing actions of Defendants violate 42 U.S.C. § 3604(f)(3)(B), 42 U.S.C. § 3617, and Sections 15-58(15) and (9) of the Palm Beach County Code;

2. Enter a permanent injunction:

   a. enjoining Defendants and their directors, officers, agents, and employees from discriminating on the basis of disability;

   b. directing Defendants to grant Plaintiffs' request for reasonable accommodation to keep an above-ground-pool in their backyard;

   c. directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory

conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future; and

    d.  directing Defendants to post signs at all of their residential properties alerting tenants, owners, potential tenants and potential owners to their rights, under the Fair Housing Act and the Palm Beach County Code;

3. Award compensatory damages to Plaintiffs in an amount to be determined by the jury that would fully compensate Plaintiffs for injuries caused by the conduct of Defendants as alleged herein;

4. Award punitive damages to Plaintiffs in an amount to be determined by the jury that would punish Defendants for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

5. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2) and Section 15-56 of the Palm Beach County Code; and

6. Award such additional or alternative relief as may be just, proper, and equitable.

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues which can be heard by jury.

Dated: <u>April, 15, 2022</u>

RESPECTFULLY SUBMITTED,

                            <u>/s/ Katherine Hanson</u>
                            Katherine Hanson, Esq.
                            Disability Rights Florida
                            Senior Staff Attorney
                            Florida Bar No.: 0071933
                            2473 Care Dr , Suite 200
                            Tallahassee, FL 32308
                            800-342-0823 ext. 9713
                            TDD 800-346-4127

Fax 850-488-8640
katherineh@disabilityrightsflorida.org

/s/ Liam Joseph McGivern
Liam Joseph McGivern, Esq.
Disability Rights Florida
Senior Staff Attorney
Florida Bar No.: 0098684
2473 Care Dr, Suite 200
Tallahassee, FL 32308
800-342-0823 ext. 9771
TDD 800-346-4127
Fax 850-488-8640
liamm@disabilityrightsflorida.org

/s/ Alison DeBelder
Alison Diana DeBelder, Esq.
Disability Rights Florida
Director Systems Reform Team
Florida Bar No.: 561223
2473 Care Dr.,
Suite 200
Tallahassee, FL 32308
850-488-9071 x. 9823
TDD 800-346-4127
alisond@disabilityrightsflorida.org


/s/ Neil L Henrichsen
Neil L Henrichsen
Florida Bar No.: 111503
Henrichsen Law Group, PLLC
301 West Bay Street, Suite 1400
Jacksonville, FL 32202
904-381-8183
Fax 904-212-2800
nhenrichsen@hslawyers.com
service@hslawyers.com




By: /s/ Katherine Hanson, Esq.
    Fla. Bar No.: 0071933